# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**September 5, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: N.H.

No. 17-0358 (Jackson County 16-JA-1)

## MEMORANDUM DECISION

Petitioner Mother A.S., by counsel James M. Pierson, appeals the Circuit Court of Jackson County's March 27, 2017, order terminating her parental rights to N.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Steven R. Compton, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Erica Brannon Gunn, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights and finding that continuation in her home threatened the health, welfare, and life of the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2016, the DHHR filed an abuse and neglect petition against petitioner and N.H.'s father alleging that petitioner and the father engaged in domestic violence in the child's presence and that petitioner frequently left the child alone and without basic provisions, including proper medical care, supervision, and shelter.[2] According to the petition, petitioner left the child with the paternal grandparents and a family friend and did not come back. The petition further alleged that petitioner failed to bond with the child or comply with West Virginia Birth to

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2] According to the record, N.H. was born with a heart murmur, blood on the brain, and cerebral palsy. As a result, the child is severely physically and developmentally delayed.

Three services ("Birth to Three").[3] Petitioner also admitted to spanking, shoving, and yanking the child in his crib, and locked the child in his bedroom when he cried. Finally, the petition alleged that the father failed to protect the child from petitioner's neglect, cared for the child while he was under the influence of drugs and/or controlled substances, admitted to marijuana use, and admitted that he knew that petitioner was leaving the child home alone. Also in January of 2016, the circuit court held a preliminary hearing, during which it found that the child was in imminent danger due to the presence of domestic violence. The circuit court removed the child from the home and ordered that petitioner and the father submit to random drug screens and parental fitness evaluations.

In February of 2016, the circuit court held an adjudicatory hearing during which petitioner admitted to engaging in domestic violence in the child's presence, abandoning him, and failing to provide him with appropriate medical care and supervision. Based upon petitioner's admission, she was adjudicated an abusing parent and granted a post-adjudicatory improvement period. The father failed to appear at the first adjudicatory hearing but was represented by counsel. The circuit court continued the hearing. In March of 2016, the circuit court resumed the adjudicatory hearing wherein it heard testimony from a service coordinator with Birth to Three, an outreach coordinator with Homebase, and petitioner.[4] Petitioner testified that the father was "involved with drugs" and that she filed for a domestic violence protective order in April of 2016 after the father put a gun to her head and threatened her life and the child's life. Based on the evidence presented, the circuit court found that petitioner and the father exposed the child to domestic violence.

In February of 2017, the circuit court held a dispositional hearing wherein it heard testimony regarding the child's substantial medical needs and petitioner's inability to accommodate the child's special needs. A nurse with Birth to Three testified that she worked with the child on multiple occasions and that the child needs daily administrations of a muscle relaxer, baclofen, and regular physical, occupational, developmental, and speech therapies. She further testified that petitioner failed to administer baclofen on at least one occasion because she "overslept." The nurse further testified that the baclofen must be administered "on time" daily or muscle spasticity can occur and increase the child's risk of choking. A Homebase coordinator testified that during her improvement period, petitioner failed to attend numerous meetings regarding the child's healthcare needs. According to the coordinator, petitioner attended only three of approximately twenty-six weekly meetings. A speech pathologist testified that petitioner did not regularly attend the child's meetings and, after January of 2016, stopped attending the meetings altogether. The speech pathologist also expressed concern regarding petitioner's ability to regularly practice the child's requisite eating and drinking exercises. A second Homebase coordinator, new to petitioner's case, expressed doubt about petitioner's ability to parent the

---

[3]West Virginia Birth to Three is an early intervention program that partners with families and caregivers to build upon their strengths by offering coordination, supports, and resources to enhance children's learning and development.

[4]Homebase is a private behavioral health and social service provider serving the entire state of West Virginia.

child because petitioner failed to regularly attend meetings related to the child's healthcare needs, but believed that petitioner was an appropriate parent. Ultimately, the circuit court terminated petitioner's parental rights by order dated March 27, 2017.[5] It is from this order that petitioner now appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

Petitioner argues that the circuit court erred in terminating her parental rights to the child because the record was insufficient to support termination; that her failure to substantially comply with her improvement period was not her fault; and that the circuit court failed to make findings pursuant to West Virginia Code § 49-4-604(b)(6).[6] Pursuant to West Virginia Code §

---

[5]Petitioner and the father's parental rights to the child were terminated below. According to the guardian, the child is currently placed in a foster home with the permanency plan of adoption.

[6]Petitioner broadly cites to the entirety of West Virginia Code § 49-4-604(b)(6) without citing to any specific provision or to the record. This is problematic in that West Virginia Code § 49-4-604(b)(6) provides that

[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, [a circuit court may] terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency. The court may award sole custody of the child to a nonabusing

(continued . . .)

3

49-4-604(b)(6), circuit courts are directed to terminate parental rights when they find that there is no reasonable likelihood that a parent could substantially correct the conditions of abuse and neglect in the near future and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing . . . parents . . . have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" In the case at bar, and as noted above, petitioner failed to attend numerous regular physical, occupational, developmental, and speech therapy meetings necessary for the child's special healthcare needs. The circuit court was also presented with evidence that, when petitioner did attend these therapy meetings, she was unable to manage the requisite specialized practices needed to maintain the child's healthcare and safety. As a result, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future; thus, termination was necessary for the child's welfare.

On appeal, petitioner argues that she was unable to comply with the some of the aforementioned services because of the "six different Homebase workers who were assigned her case." However, petitioner fails to acknowledge that the circuit court granted her a three month extension on her improvement period to specifically accommodate for the "unforeseeable delays with services." There is no evidence that the different Homebase coordinators caused petitioner to miss numerous therapy services for the child. Given the circumstances presented in this case, the circuit court did not err in terminating petitioner's parental rights to the child.

---

battered parent. If the court shall so find, then in fixing its dispositional order the court shall consider the following factors: (A) The child's need for continuity of care and caretakers; (B) The amount of time required for the child to be integrated into a stable and permanent home environment; and (C) Other factors as the court considers necessary and proper. Notwithstanding any other provision of this article, the court shall give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights. No adoption of a child shall take place until all proceedings for termination of parental rights under this article and appeals thereof are final. In determining whether or not parental rights should be terminated, the court shall consider the efforts made by the department to provide remedial and reunification services to the parent. The court order shall state: (i) That continuation in the home is not in the best interest of the child and why; (ii) Why reunification is not in the best interests of the child; (iii) Whether or not the department made reasonable efforts, with the child's health and safety being the paramount concern, to preserve the family, or some portion thereof, and to prevent the placement or to eliminate the need for removing the child from the child's home and to make it possible for the child to safely return home, or that the emergency situation made those efforts unreasonable or impossible; and (iv) Whether or not the department made reasonable efforts to preserve and reunify the family, or some portion thereof, including a description of what efforts were made or that those efforts were unreasonable due to specific circumstances.

Petitioner also argues that the circuit court erred in finding that continuation in her home threatened the health, welfare, and life of the child. Specifically, petitioner highlights that one of the Homebase coordinators testified that petitioner had a "significant bond" with the child and "properly cared for [the child] on [her] visits, including giving his medications appropriately, feeding, changing him, interacting with him using his toys and word games." Petitioner claims that this coordinator's testimony was sufficient to show that the circuit court ignored this finding and therefore erred in terminating her parental rights. However, petitioner's argument ignores the record and the abundant unfavorable testimony given by other witnesses. Moreover, the circuit court specifically addressed the coordinator's testimony in the final order and weighed it against the testimony of the other witnesses. This included testimony that petitioner's failure to timely administer medication increased the chances of the child choking. Further, even though the coordinator's testimony was generally positive, she still expressed concern over petitioner's inability to regularly attend meetings and therapy sessions. As the trier of fact, the circuit court was tasked with making credibility determinations as to the various witnesses and these findings are entitled to deference on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). As such, we will not second guess the circuit court's findings and find no error in the circuit court's order terminating petitioner's parental rights to the child.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 27, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: September 5, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

5